Michelle D. Sinnott (AK Bar No. 1506049)
Brook Brisson (AK Bar No. 0905013)
TRUSTEES FOR ALASKA
121 W. Fireweed Ln., Suite 105
Anchorage, AK 99503
Phone: (907) 276-4244
Fax: (907) 276-7110
msinnott@trustees.org
bbrisson@trustees.org

*Attorneys for Plaintiffs*

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| FRIENDS OF ALASKA NATIONAL WILDLIFE REFUGES, *et al.*,<br><br>Plaintiffs,<br>v.<br><br>U.S. ARMY CORPS OF ENGINEERS, *et al.*,<br><br>Defendants,<br><br>and<br><br>KING COVE CORPORATION, *et al.,*<br><br>Intervenor-Defendants. | Case No. 3:26-cv-00272-ACP |
| NATIVE VILLAGE OF HOOPER BAY, *et al.,*<br><br>Plaintiffs,<br><br>v. | Case No. 3:26-cv-00274-ACP |

| |
|---|
| U.S. ARMY CORPS OF ENGINEERS, *et al.*,<br><br>Defendants,<br><br>and<br><br>KING COVE CORPORATION, *et al.*,<br><br>Intervenor-Defendants. |

**[PROPOSED] SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION**

## INTRODUCTION

On August 18, 2026, the Court vacated a land exchange agreement between the U.S. Department of the Interior and King Cove Corporation (KCC). Decision and Order, *Friends of Alaska National Wildlife Refuges v. Burgum*, Case No. 3:25-cv-00318-SLG, ECF No. 44 (D. Alaska Aug. 18, 2026) [hereinafter Vacatur Order]. The Court held that Interior violated Title XI of the Alaska National Interest Lands Conservation Act (ANILCA) in approving the land exchange, and "because [Interior] did not comply with Title XI, the Exchange has no "force or effect." *Id.* at 40-46, 86 (quoting 16 U.S.C. § 3164(a)). As the Court explained, every "authorization" of a "transportation or utility system" within a conservation system unit in Alaksa must comply with Title XI's requirements. *Id.* at 36 (quoting 16 U.S.C. § 3161(b)–(c)).

The Court's Vacatur Order directly impacts Plaintiffs Friends of Alaska National Wildlife Refuges *et al*. (Friends) motion for a preliminary injunction because it strengthens the likelihood that Friends will succeed on the merits of their claims, and tips the equities further in Friends' favor. *See* Pls. Mot. for Temp. Restraining Order and Prelim. Inj. at 13-14, ECF No. 8 [hereinafter Mot.]

Friends challenge the U.S. Army Corps of Engineers' (Corps) issuance of Permit POA-2010-00286 (Permit), which authorizes construction of an 18.9-mile road through Izembek National Wildlife Refuge and Wilderness (Izembek), on lands unlawfully conveyed to KCC in the vacated land exchange. *See* Compl., ECF No. 1. Like the unlawfully approved land exchange, the Permit is an "authorization" of a road within a conservation system unit and thus compliance with ANILCA Title XI is mandatory. 16 U.S.C. § 3164(a). It is undisputed that the Corps did not comply with Title XI. Friends are therefore likely to succeed on their claim that the Corps violated Title XI. *See* Compl. at 38–39.

In addition, Friends are even more likely to succeed on their claims under the Clean Water Act (CWA), as the Vacatur Order undercuts several key aspects of the Corps' justification for issuing the Permit, including the Corps' determination that the road is the least environmentally damaging practicable alternative (LEDPA).

Finally, the Vacatur Order tips the equities even more sharply in Friends' favor because no benefit from the road would manifest during the pendency of this litigation. For

these additional reasons, this Court should enjoin the Corps from allowing the State of Alaska Department of Transportation and Public Facilities (AKDOT), including any contractors, operators, or anyone else, from engaging in any ground-disturbing activities in reliance on the Permit until this Court has adjudicated the merits of the case.

## I. Friends are Likely to Succeed on Their Claim That the Corps Violated ANILCA Title XI by Issuing a Permit Without Following its Mandatory Procedures.

ANILCA Title XI establishes a "single comprehensive statutory authority for the approval or disapproval of applications for [transportation and utility] systems" within conservation system units. 16 U.S.C. § 3161(c). This applies to roads within National Wildlife Refuges and designated Wilderness, like Izembek. *Id*. § 3162(4)(A). Congress enacted Title XI "to minimize the adverse impacts of siting transportation and utility systems within units established or expanded by" ANILCA and "to insure the effectiveness of the decisionmaking process." *Id.* § 3161(c).

Title XI requires that transportation systems "be approved or disapproved in accordance with" very specific procedures. *Id*. § 3162. When a proposed road would "occupy, use, or traverse any area within" designated Wilderness lands, an agency cannot issue the authorization unless "the President approves the application" and Congress enacts a joint resolution approving the system. *Id.* § 3166(b)–(c). Title XI also mandates the use of specific forms, preparation of an environmental impact statement (EIS), compliance

with specific timelines, public involvement, and that each agency with any permitting authority over the transportation system make eight detailed findings. *Id.* § 3164.

Congress was clear that Title XI's procedures are mandatory:

> Notwithstanding any provision of applicable law, no action by any Federal agency under applicable law with respect to the approval or disapproval of the authorization, in whole or in part, of any transportation or utility system shall have any force or effect unless the provisions of this section are complied with.

*Id*. § 3164(a).

Title XI defines "applicable law" as "any law of general applicability" under which a federal agency "has jurisdiction to grant any authorization (including but not limited to, any right-of-way, permit, license, lease, or certificate) without which a transportation or utility system cannot, in whole or in part, be established or operated." *Id.* § 3162(1). Title XI applies if "any portion of the route" of the road will be "within [a] conservation system unit." *Id.* § 3162(4)(A), (B)(vii).

Here, the Permit authorizes construction of a road within Izembek, and without the Permit, the road cannot be constructed. This means the CWA is "applicable law," and the Permit is an "authorization" of a transportation system within a conservation system unit and designated Wilderness, subject to Title XI. ANICLA's mandatory requirements therefore apply.

It is undisputed that the Corps did not comply with Title XI in issuing the Permit. The Corps' failure to follow ANILCA's mandatory requirements deprives the Permit of

any "force or effect." *Id.* § 3164(a). Friends are therefore likely to succeed on their claim that the Corps violated Title XI in issuing the Permit.

**II. Friends are Likely to Succeed on Their Clean Water Act Claims.**

Friends established that they are likely to succeed on their claim that the Corps' LEDPA determination was arbitrary, capricious, and unlawful. Mot. at 15–19; Pls.' Reply in Supp. of Mot. for TRO/Prelim. Inj. at 5–7, ECF No. 25 [hereinafter Reply]. The Vacatur Order further undermines the Corps' justifications for issuing the Permit — including its LEDPA determination — making it even more likely that Friends will prevail on their CWA claims.

For instance, the Permit authorizes construction of a road on lands "owned by [KCC]," but the Vacatur Order invalidated the land exchange, meaning the lands are no longer owned by KCC. Vacatur Order at 46. Similarly, the Corps' decision was premised on the fact that the proposed road corridor was "no longer on Federally managed land" and "no longer in a federally designated wilderness." Pls. Ex. 11 at 16 (Memorandum for Record, ECF No. 8-12). That fact no longer holds true.

And critically, the Vacatur Order undermines the Corps' selection of the preferred "Southern Route" as the LEDPA, and its rejection of the "Northern Route" alternative. The Corps determined that the "Southern Route" was the LEDPA because the only other alternative it examined, the "Northern Route," would run through "federally designated wilderness" and "require a land transfer or possibly congressional approval." *Id.* at 25–26.

As Friends explain, this was not a genuine comparison of practicable alternatives due to the Northern Route's location within designated Wilderness. *See* Mot. at 17; Reply at 6–7. However, because of the Court's Vacatur Order, the "Southern Route" would now also pass through designated Wilderness. The "Southern Route" therefore presents the same challenges as the "Northern Route," and there is no rational basis for its selection as the LEDPA.

## III. The Vacatur Order Tips the Balance of Equities and Public Interest Even More Sharply in Friends' Favor.

The balance of equities already favored an injunction because any social or economic benefits from a road were not likely to manifest before the merits of this case are resolved. Mot. at 25; Reply at 9–10. The Court's Vacatur Order puts any dispute on this point to rest. Under ANILCA Title IX, a road through designated Wilderness may only be authorized after Presidential and Congressional approval. 16 U.S.C. § 3166(b)–(c). It is unlikely that the Corps could complete the Title XI process and obtain Presidential and Congressional approval before the Court is able to issue a decision on the merits. Further, a road connecting King Cove with Cold Bay is expected to take three years to construct. Pls. Ex. 11 at 2. A delay of a few months from a preliminary injunction would be relatively minor in comparison to these time frames.[1]

[1] In addition, the Vacatur Order further reinforces that the State's claimed financial harms should not bear on the balance of equities, because the State chose to move forward with the road project before the legality of the land exchange had been settled. *See* Reply at 10.

Finally, the public interest strongly favors an injunction because there is no public interest in continuing unlawful and environmentally harmful federal agency or State action. *Novedades y Servicios, Inc. v. Fin. Crimes Enf't Network*, 181 F.4th 961, ____, 2026 U.S. App. LEXIS 20429 *44 (9th Cir., July 13, 2026) ("[T]here is generally no public interest in the perpetuation of unlawful agency action.") (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)); *Valle de Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("It is clear that it would not be equitable or in the public's interest to allow the state to violate the requirements of federal law . . . ."); *All. For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011) ("[W]e recognize the well-established 'public interest in preserving nature and avoiding irreparable environmental injury.'") (quoting *Lands Council v. McNair*, 537 F.3d 981, 1003 (9th Cir. 2008)); *see also* Vacatur Order at 88 ("The Court acknowledges the hardships identified by Federal Defendants and the serious concerns of the residents of King Cove that have sought for decades to have a road to Cold Bay constructed. But those circumstances cannot justify keeping in place an unlawful land exchange that would allow road construction to proceed.").

## CONCLUSION

Friends are likely to succeed on their claims that the Corps violated ANILCA Title XI and the CWA. In addition, the balance of equities and public interest tip sharply in Friends' favor. For all of these reasons, Friends respectfully request that the Court enjoin the Corps from allowing AKDOT, including any contractors, operators, or anyone else,

from engaging in any ground-disturbing activities in reliance on the Permit until this Court has adjudicated the merits of the case.

Respectfully submitted this 20th day of August, 2026.

s/ Michelle D. Sinnott
Michelle D. Sinnott (AK Bar No. 1506049)
Brook Brisson (AK Bar No. 0905013)
TRUSTEES FOR ALASKA

*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

I certify that on August 20, 2026, I caused a copy of [PROPOSED] SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER/ PRELIMINARY INJUNCTION to be electronically filed with the Clerk of the Court for the U.S. District Court of Alaska using the CM/ECF system.

s/ Michelle Sinnott
Michelle Sinnott