James F. Clark
Law Office of James F. Clark 1109 C Street
Juneau, AK 99801
ABA No.6907025
(907) 723-6952
jfclarkiii@gmail.com
Attorney for Defendant—Intervenors

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | | |
|---|---|---|
| FRIENDS OF ALASKA NATIONAL WILDLIFE REFUGES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. ARMY CORPS OF ENGINEERS, et al.,<br>Defendants,<br><br>v.<br><br>KING COVE CORPORATION, and CITY OF KING COVE<br><br>Defendant-Intervenors | ) | Case No. 3:26-cv-00272-ACP |

**KING COVE CORPORATION, and CITY OF KING COVE OPPOSITION TO PLAINTIFFS' MOTION FOR EXPEDITED CONSIDERATION [DOCKET 41] AND TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION [DOCKET 40] ((hereinafter collectively referred to as "Plaintiffs' Motions").**

## I. INTRODUCTION[1]

To obtain the injunctive relief it seeks Plaintiff must show that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).

Plaintiffs' Motions should be denied because Plaintiffs' claims of succeeding on the merits, suffering imminent and irreparable harm, prevailing on the balance of hardships test, or showing that an injunction is in the public interest pertain to the Corps of Engineers (COE) Clean Water Act (CWA) § 404 Permit issued on July 9, 2026, that authorized construction of 4.58 acres wetlands on an 18.9-mile road. The part of the Project on land that KCC received in the Land Exchange that required a CWA § 404 Permit because it impacted wetlands (the corridor) was suspended by the Court on August 18, 2026, when it vacated the Land Exchange. It follows that there is no possibility of imminent or irreparable harm to Plaintiff from that portion of the Project because it is not proceeding.

Plaintiffs' arguments do not seem to recognize that the 2.8-mile remaining portion of the Road Project, now before the Court can still proceed on its own because: 1) it was owned by KCC before the October 2025 Land Exchange thus not subject to the Court's

---

[1] Defendant-Intervenors hereby incorporate by reference the arguments made and documents attached to the State of Alaska, King Cove Corporation and City of King Cove Joint Opposition to Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction, filed August 6, 2026, at Docket 18. (hereinafter referred to as "SOA-KCC Joint Opposition").

August 18, 2026, vacation Order; and 2) it does not require a CWA § 404 permit because it does not impact wetlands. Because the CWA § 404 Permit is not needed for this part of the Project, an Order from this Court would not redress Plaintiffs' grievance.

While Plaintiffs assert at page 10 of their Motion that they are "likely to succeed on the merits of their claim that the Corp's permitting decision authorizing construction of the Izembek Road is unlawful," it is irrelevant because the 2.8-mile part of the road is being built by the State of Alaska on KCC land, not subject to the Land Exchange, on a right of way that does not impact wetlands. Surely, Plaintiffs are not claiming that KCC needs a Title XI Permit to build a road on its own land or a CWA § 404 Permit when that road does not impact wetlands.

## II. SUMMARY OF ARGUMENT

As admitted by Plaintiff[2], the portion of the Project now before the Court is for a 2.8-mile road to be constructed on land owned by KCC's that was not acquired in the now vacated October 2025 Land Exchange.. (Kochuten Declaration at Pars. 7 and 8) Nevertheless at page 8 of their Motion [Docket 40] Plaintiffs' argue: "Plaintiffs are likely to succeed on the merits because the Army Corps permit authorizes Izembek Road construction that is unlawful under ANILCA Title XI and a recent decision of this Court."

---

[2] At page 5 of their Motion Plaintiff says: "Most of the proposed road would be sited within the corridor of land that interior transferred to KCC in the now vacated land exchange, ***with 2.8 miles of road on the King Cove side being on KCC owned land that was not part of the exchange***." (Emphasis added).

Plaintiff is wrong for two main reasons: 1) because the 2.8-mile Project does not impact wetlands, a Clean Water Act (CWA) § 404 permit is not required or relied upon by the State of Alaska and Defendant-Intervenors to construct what is now the 2.8-mile part of the Project now before the Court[3] - the Corps Permit is not relevant to the 2.8-mile part of the Project and 2) because it is entirely on land that KCC owned prior to the October 2025 Land Exchange, the 2.8-mile road Project is not subject to, or impacted by, the Court's August 18, 2026, Order vacating the Land Exchange. Accordingly, Plaintiffs' claim that the 2.8-mile Project violates CWA § 404 is without merit and should be denied and its claim that the Project violates Article XI of ANILCA is without merit and should be denied along with its claims of harm resulting therefrom.

This proposed construction project will provide KCC's and the City's subsistence hunters and fishers with better and more environmentally sensitive access to Kinzaroff Lagoon. It will also close existing ATV trails over environmentally sensitive State-owned tidelands and over the eastern "bookend" of Kinzarof Lagoon.[4] The Project thus provides environmental benefits and has independent utility stand apart from the 18.9-mile Project.

---

[3] See Lockwood Declaration, Exhibit 2, SOA-KCC Joint Opposition at ¶¶ 17-18 and Tiberio Declaration, Exhibit 3, SOA-KCC Joint Opposition, at ¶ 10.

[4] See discussion of this point at pages 21-22 of SOA-KCC Joint Opposition:

> Though the benefits of construction of the initial 2.8 miles of road may be initially unclear, AKDOT, KC, and KCC assert that this initial construction phase will not only render significant benefits to the community of King Cove but is also environmentally beneficial. Construction of the initial 2.8 miles of road seeks to reestablish the historical means of access for King Cove residents to subsistence use lands on the Kinzarof Lagoon bookends and consolidate off-road vehicle (ORV)

Finally, Plaintiff does not have standing to contest the 2.8-mile road part of the Project on land that KCC owned prior to the October 2025 Land Exchange.

## III. ARGUMENT

### A. Plaintiff is Unlikely to Prevail on the Merits.

#### 1. The Plaintiff Lacks Standing to Seek an Injunction

a. Standard of Review

Article III of the United States Constitution requires a party seeking to challenge an agency action to establish an injury that is not only "concrete and particularized," meaning it "affect[s] [the plaintiffs] in a personal and individual way," but is also "fairly trace[able] to the challenged action. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 561 n.1 (1992).

As the Supreme Court explained in *Spokeo, Inc. v. Robins* 576 U.S. 330, 338 (2016):

> Our cases have established that the "irreducible constitutional minimum" of standing consists of three elements. *Lujan*, 504 U.S., at 560, 112 S.Ct. 2130. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Id*., at 560–561, 112 S.Ct. 2130; *Friends of the Earth, Inc*., 528 U.S., at 180–181, 120 S.Ct. 693. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Where, as here, a case is at the pleading stage, the plaintiff must "clearly ... allege facts demonstrating" each element. *Warth*, supra, at 518, 95 S.Ct. 2197.

b. Plaintiff Has Not Alleged, and Will Not Suffer, Injury from the 2.8 Mile Road Construction Project Planned to Be Built on KCC land that KCC owned prior to the October 2025 Land Exchange.

---

access onto a consolidated route to prevent compounding impacts caused by dispersed use. Ex 2 ¶ 16 (Lockwood Declaration); Ex 3 ¶ 10 (Riberio Declaration).

Neither Plaintiffs' July 24, 2026, Complaint nor its August 21, 2026, Motion for TRO and Preliminary Injunction '"clearly … allege facts demonstrating' each element" of standing regarding the 2.8-mile road to be constructed on KCC land. It follows that Plaintiffs' Motions must be denied for this reason alone.

2. **Nor Would Plaintiff Have Standing Regarding the 2.8-mile Road Project on Land that KCC Owned Prior to the Land Exchange that is now before the Court**..

   a. Plaintiff Has Not Suffered an Injury in Fact from the 2.8-mile Road Project on KCC land

Because the 2.8-mile Road Project is planned for construction on land that KCC owned prior to the October 2025 Land Exchange it is not subject to the Court's August 18, 2026, determination (that Title XI of the Alaska National Interests Lands Act (ANILCA) applies to ANILCA § 1302 (h) land exchanges). Accordingly, Plaintiffs' Article XI claim does not apply to the 2.8-mile Road Project and Plaintiffs' claims of harm resulting therefrom are unavailing.

Because the 2.8-mile Road Project that is planned for construction on KCC land does not impact wetlands[5], it does not rely on authorization from the (CWA) § 404 permit to proceed. Therefore, Plaintiff will not suffer any harm due to an impact on wetlands.

While the Declaration of Paul Wirt alleges use of the Refuge and that construction of the 18.9-mile road will cause injury to his bird hunting in the Refuge and his general

---

[5] See Lockwood Declaration, Exhibit 2, SOA-KCC Joint Opposition at ¶¶ 17-18 and Tiberio Declaration, Exhibit 3, SOA-KCC Joint Opposition, at ¶ 10.

enjoyment of the Refuge, his Declaration does not allege use of KCC's land or damage to his interests from the 2.8-mile road Project on KCC land. As the Declaration of KCC Executive Director, Chantae Kochuten, explains, neither Mr. Wirt nor Mr. Flint nor any of Plaintiffs" members have any right to use KCC's land as invitees or otherwise and she is even unaware of any such persons using KCC land as trespassers. (Kochuten Declaration at Par. 10)

b. Plaintiffs' Injury is Not Fairly Traceable to the 2.8-mile Road part of the Project on KCC land.

While Plaintiff alleges that construction of the 18.9-mile road will cause injury to the Refuge, for the reasons given in the previous sections above no such injury has been alleged or can be traced or alleged to construction of the 2.8-mile road on KCC's pre-exchange land. So, Plaintiff has failed to satisfy this prong of the Standing test.

c. Redressability.

Plaintiffs' claims of injury from construction of the 18.9-mile road due to violation of CWA § 404 and Title XI of ANILCA has already been redressed by the Court's August 18, 2026, Order vacating the October 2025 Land Exchange. Because Plaintiff has alleged no harm from construction of the 2.8-mile portion of the road on what was KCC land before the Land Exchange and therefore not subject to Title XI, and because the 2.8-mile road does not rely on the CWA § 404 Permit to proceed, Plaintiffs' claims of harm not already satisfied by the Court's August 18, 2026, Order cannot be redressed by this litigation.

In conclusion, for all the above reasons Plaintiff does not have standing to sue for a TRO or Preliminary Injunction to halt the 2.8-mile Road Project under Article III of the Constitution. See the Supreme Court Opinions in *Spoleo* and *Lujan, supra*. .

**3. ANILCA Title XI Does Not Affect the 2.8-mile Road part of the Project on KCC land.**

The land on which the 2.8 miles of road is planned to be constructed is land which KCC owned prior to the October 2025 Land Exchange. Kochuten Declaration at Par. 8). The 2.8-mile Road Project was thus not subject to, or affected by, that Land Exchange or the Court's August 18. 2026 Order vacating the 2025 Land Exchange. Accordingly, Plaintiff has no Title XI claim whatsoever in this case, much less one that would allow it to succeed on the merits. Plaintiff has the burden of proof on this point and has presented no argument why Title XI applies to a Project on land that was owned by KCC prior to the 2025 Land Exchange.

**4. The 2-8-mile Road Project Having No Impact on Wetlands, a CWA § 404 Permit Is Not required in this Case.**

Because a Clean Water Act (CWA) § 404 permit is not required or relied upon by the State of Alaska and Defendant-Intervenors for the planned 2.8-mile part of the Project before the Court,[6] Plaintiffs' claim of a violation of CWA § 404 is without basis or merit and its claims of harm resulting therefrom do not apply or exist. Plaintiff has the burden of

[6] See Lockwood Declaration, Exhibit 2, SOA-KCC Joint Opposition at ¶¶ 17-18 and Tiberio Declaration, Exhibit 3, SOA-KCC Joint Opposition, at ¶ 10.

proof on this point and has presented no argument explaining why CWA § 404 applies to a Project that does not impact jurisdictional wetlands.

**5. Conclusion.** In conclusion, for all the above reasons Plaintiff does not qualify under *Winter, supr*a. for a TRO or Preliminary Injunction to halt the 2.8-mile Road Project before the Court because Plaintiff is unlikely to succeed on the merits.

**B. Plaintiff Has Not Shown, and Is Not Able to Show, that It is Likely To Suffer Irreparable Harm in the Absence of Preliminary Relief from the 2.8-mile Road Project that is Planned to Take Place on Land that KCC Owned before the 2025 Land Exchange Occurred or that the Balance of Equities Tips in Its Favor.**

**1. Introduction.**

Because Plaintiff filed its present Motion on August 21, 2026, after the Court's August 18, 2026, Order vacating the October 2025 Land Exchange, Plaintiff seems to be claiming that the harms to fish and wildlife that Plaintiff previously claimed would result from construction of an 18.9 mile road impacting 4.58 acres of wetlands, are no different than the harms to fish and wildlife that Plaintiff claims would result from construction of a 2.8 mile road on KCC land that has no impact on wetlands. If this is what Plaintiff is claiming, it stretches credulity to the breaking point.

This is Native-owned land that ANCSA gives KCC a right to develop. By analogy Plaintiffs' claim of harms is like the owner of a 315,000-acre estate taking an adjacent property owner to court claiming damages to his entire estate from the driveway the property owner is building.

2. Plaintiffs' Claim of Harm were Disputed in SOA – KCC Joint Opposition filed August 6, 2026, at Docket 18.[7]

**a. Introduction.**

To prevail on their Motion Plaintiffs must show that they will suffer imminent and irreparable harm if they are not granted an injunction. Their reasons for requesting the injunction is set out at pages 8 – 10 of their Motion: "The Corp's authorization of a 404 permit for construction of a road through the Izembek - an ANILCA-designated conservation system unit- is unlawful because there has been no compliance with Title XI's processes."[8]

This argument does not apply here because the land on which the 2.8-mile road will be built is land that was owned by KCC prior to the October 2025 Land Exchange and does not require a CWA § 404 Permit because it does not impact wetlands. Thus, even under Plaintiffs formulation of the law a Title XI Permit is not required.

**b. Plaintiffs Have no Rights or Interests in "Preserving, Using, and Enjoying" the KCC land on which the 2.8-mile Road Is Planned to Be Built.**

At page 10 of their Motion Plaintiffs' contend: "ADOT's Imminent road construction, currently slated to begin September 1, 2026, will irreparably harm members'

---

[7] Please see pages 19 – 31of the SOA – KCC Joint Opposition filed August 6, 2026, at Docket 18 for the State's, KCC's, and the City of King Cove's explanation why Plaintiff will not suffer irreparable harm in the absence of preliminary relief. Some of the arguments will no longer apply because of the Court's August 18, 2026, vacation of the Land Exchange which came after the filing of the Joint Opposition.

[8] See Page 8 of Plaintiffs' Motion [Docket 40]

interests by irreversibly degrading the landscape they presently seek to preserve, use and enjoy." But the land on which the 2.8-mile road will be built is KCC land which KCC has every right and expectation under the Alaska Native Claims Settlement Act (ANCSA) to develop and which Plaintiffs' members have no right to preserve. This is particularly true in this case where the 2.8-mile road will provide better access to subsistence resources. In addition. Plaintiffs members have no right to "use and enjoy" absent permission from KCC which has not been given.[9] (Kochuten Declaration at Par.10).

**c. ORV Use for Subsistence Purposes Is Already Permitted But Will Better Channeled by the Road and KCC's**

Plaintiffs complain at page 13 of their Motion that "Increased ORV access will follow from construction of the initial 2.8 miles of road." As the SOA-KCC Joint Oppositon points out at page 22: "[A]llowable ORV use [to] access subsistence resources in the region and that consolidation of ORV into a designated route could in fact decrease environmental impacts by reducing ORV use."[10]

The SOA-KCC Joint Opposition explains at pages 23-24:

> Like Gambell, the short extension of the King Cove Road is in a rural, isolated, and sparsely populated region, with a long history of ORV travel to access subsistence resources on established pathways.[11] As part of the environmental permitting process for the Project, KCC voluntarily

[9] Because Plaintiffs' assertion regarding Plaintiffs' members' rights on KCC land is grossly inaccurate, Plaintiffs do not gain standing under *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181, 199 (2023). The reasons why Plaintiffs do not have standing remain as stated at pages 5-8 of this Opposition Brief.

[10] See Lockwood Declaration, Exhibit 2, SOA-KCC Joint Opposition at ¶¶ 16 and Tiberio Declaration, Exhibit 3, SOA-KCC Joint Opposition, at ¶ 10.

[11] Tiberio Declaration, Exhibit 3, SOA-KCC Joint Opposition, at ¶ 10.

> committed to a combination of public education and outreach regarding suitable pathways for subsistence access, monitoring of use in areas near the road corridor or established trails.88 Further, access to a centralized route providing access to the Kinzarof Lagoon bookends and the Cold Bay road system will eliminate the need and incentive for dispersed ORV travel, likely resulting in similar beneficial impacts to the surrounding environment as was observed in Gambell.

For these reasons, the 2.8-mile road is more likely to reduce the impacts of ORV use than to increase it.

Plaintiffs' assert no other harm specific to the 2.8-mile road on KCC land.

**d. The Balance of Hardships Favors KCC.**

Plaintiffs' callousness to the lifeline that a road from King Cove to Cold Bay would provide for the health, safety, and enjoyment of the people of King Cove is displayed by Plaintiffs' statement at page 17 of their Motion: "To the extent that the road may provide economic or other benefits, those benefits will merely be delayed; a delay in recognizing benefits does not overcome irreparable environmental harm." Folks at King Cove would likely point out that the delay has lasted longer than the author of that statement was born.

At pages 29 – 31 the SOA- KCC Joint Opposition describes how the particular impacts of delay have impacted KCC's exercise and enjoyment of its land rights. ANSCA was to be an example of Alaska Native policy "moving from reservation, assimilation, and termination to an era of self-determination."[12] Section 2 of ANSCA provides that Alaska Native land claims should conform "with the real economic and social needs of Natives

[12] *Alaska v. Native Village of Venetie Tribal Government*, 522 U.S.520, 523-24 (1998).

and "with maximum participation by Natives in decisions affecting their rights and property,"[13] The delay that the Plaintiffs so cavalierly dismiss has prevented these goals from being fully achieved. (Kochuten Declaration at Par11.).

The eternal delay in KCC achieving the promises of ANSCA and ANILCA and the lack of harm attributable to construction of the 2.8-mile road make the balance of hardships tip sharply in Defendant -Intervenors.

## IV. CONCLUSION

Because of Plaintiffs' lack of standing and their otherwise unlikely probability of success on the merits regarding the 2.8-mile road planned to be built on land that KCC owned before the October 2025 Land Exchange, Plaintiffs' inability to show that construction of the 2.8-mile road on KCC land would cause them irreparable harm, the fact that the balance of equities and public interest tips sharply in favor of KCC and the City of King Cove, Plaintiffs have failed to make the significant showing required receive preliminary relief, and their Motion for a Temporary Restraining Order and Preliminary Injunction should be denied.

August 24, 2026 Respectfully submitted,

*s/ James F. Clark*
James F. Clark
Law Office of James F. Clark
1109 C Street
Juneau, AK 99801
(907) 723-6952 (cellphone)
jfclarkiii@gmail.com
Ak Bar # 6907025

[13] 43 U.S.C.§ 1601 (b)

## CERTIFICATE OF COMPLIANCE WITH WORD LIMITS

I certify that this document contains 3,424 words, excluding items exempted by Local Civil Rule 7.4(a)(4), and complies with the word limits of Local Civil Rule 7.4(a)

Date: August 24, 2026

s/ *James F. Clark*
James F. Clark
Law Office of James F. Clark
1109 C Street
Juneau, AK 99801
(907) 723-6952 (cellphone)
jfclarkiii@gmail.com
Ak Bar # 6907025

Attorney for Defendant-Intervenors

## CERTIFICATE OF SERVICE

I certify that on August 24, 2026, I caused a copy of the King Cove Corporation, and City of King Cove Opposition to Plaintiffs' Motion for Expedited Consideration [Docket 41] and to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction. [Docket 40.] to be electronically filed with the Clerk of the Court for the U.S. District Court of Alaska using the CM/ECF system.

Date: August 24, 2026

*s/ James F. Clark*
James F. Clark
Law Office of James F. Clark
1109 C Street
Juneau, AK 99801
(907) 723-6952 (cellphone)
jfclarkiii@gmail.com
Ak Bar # 6907025

Attorney for Defendant-Intervenors